UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVEN and LOURDES ISAACSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHN HANCOCK INSURANCE AGENCY, INC., STARR INDEMNITY & LIABILITY COMPANY, and SEVEN CORNERS INC.<br><br>Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Kevin and Lourdes Isaacson ("Plaintiffs") allege, on behalf of themselves and all others similarly situated, upon personal knowledge as to themselves and their acts and as to all other matters upon information and belief, as follows:

### INTRODUCTION

1. This is a class action for restitution against John Hancock Insurance Agency, Inc. ("John Hancock"), Starr Indemnity & Liability Company ("Starr"), and Seven Corners Inc. ("Seven Corners") (collectively "Defendants") arising from their wrongful conduct towards Plaintiffs and other similarly situated insurance policyholders. Plaintiffs and the Class they seek to represent: (1) purchased a single-trip travel protection plan from Defendants which included a bundled array of travel-related insurance benefits offering coverage for both pre- and post-departure perils; (2) cancelled their insured travel prior to the scheduled departure date; but (3) did not receive a *pro rata* refund for that portion of the gross policy premium which was paid

exclusively for post-departure coverages that were unearned by Defendants because of the cancellation of those trips.

2.  Plaintiffs and the Class they seek to represent have suffered injury in the form of monetary loss because they paid premiums for insurance coverages that could not materialize due to cancellation of their trips. Defendants were never exposed to, or assumed, any transferred risk of loss.

3.  Travel insurance products provide reimbursement in the event of financial loss or hardship related to travel. Travel insurance is available to cover a wide array of perils associated with travel, including both pre-departure risks, such as the possibility that a traveler will lose pre-paid nonrefundable deposits or payments if a trip is canceled prior to departure, as well as risks that arise exclusively post-departure, such as interruption of a trip, medical or dental emergencies during a trip, and lost, stolen or damaged baggage. By its nature, this second category of coverages -- exclusively for post-departure risks -- is insurance coverage providing coverage for travel related perils that can only arise after travel is underway.

4.  Plaintiffs bought a single-trip "Travel Insurance Policy" distributed by John Hancock that was underwritten by Starr and administered by Seven Corners.  Plaintiff's Travel Insurance Policy is attached hereto as Exhibit A.

5.  Defendants offer a variety of single-trip Travel Insurance Policies which can include some or all of the travel insurance protections offered by Defendants. Plans offered include "Bronze," "Silver," and "Gold" plans. Typically, the more perils covered, the more expensive is the gross premium for all the policy coverages combined within a single plan.

6. The Travel Insurance Policies sold by Defendants include travel insurance benefits that are applicable exclusively post-departure, meaning that Defendants are not at risk of having to cover the associated risks prior to commencement of actual travel by the insured.

7. When a customer purchases a Travel Insurance Policy from Defendants, he or she receives documents that lay out the benefits and conditions of the policy. These documents, which can include a "Schedule of Benefits," "Confirmation of Benefits," "Receipt of Purchase," "Wallet ID Card," and "Summary of Benefits," describe the terms and conditions of the purchased travel insurance for coverage in the event there is a sudden, unexpected problem or event before or during travel as well as any exclusions. These documents delineate the different policy benefits the insured purchased through his or her particular Travel Insurance Policy and the coverage limits of each corresponding benefit.

8. Defendants can readily identify the *pro rata* share of the gross premium which is attributable to each bundled policy benefit purchased by each insured under that person's specific plan, including those relating solely to post-departure benefits.

9. When a policyholder informs Defendants that their trip is cancelled for whatever reason, Defendants do not return the *pro rata* portion of the gross premium which the insured paid exclusively for coverage of post-departure risks – which risks are never assumed by, or transferred to Defendants, when his or her trip is cancelled prior to commencement of actual travel.

10. This is despite the fact that Defendants' Travel Insurance Policies do not address how they handle premium refunds for any portion of the gross insurance premium that was paid in advance for post-departure coverages that were in fact never provided (in the event of cancellation of the trip).

11. "If an insurer assumes no risk in a contract for insurance, then the insurer has

suffered no bargained for detriment, and in the absence of that consideration the insured's premium must be returned." *Anderson v. Travelex Ins. Servs., Inc.*, No. 8:18-CV-362, 2019 WL 1932763, at *3 (D. Neb. May 1, 2019)

12. When an insured's trip is cancelled prior to departure, Defendants are obligated to return the portion of the premium paid for coverage of risks that are only applicable post-departure. This is because the portion of the gross premium paid in exchange for these exclusively post-departure benefits is unearned inasmuch as Defendants were never at risk of having to cover the perils of actual travel.

13. The American Academy of Actuaries Travel Insurance Task Force found in its 2018 report that: "if a policy includes only benefits that cover post-departure exposures (e.g., trip interruption, medical), *there is no risk exposure between the policy purchase date and the departure date. Consequently, no premium should be earned for the pre-departure period*." American Academy of Actuaries Travel Insurance Task Force, "Travel Insurance: An Actuarial Perspective," at 18 (Sept. 2018) (emphasis added).[1]

14. When an insured's trip is cancelled prior to departure, Defendants do not provide any consideration in return for the portion of the gross premium connected with post-departure perils, which Defendants always require be paid in advance of travel.

15. Defendants' systematic failure to return the unused and unearned premium to purchasers of Defendants Travel Insurance Polices is unconscionable, unjust, unfair, and unlawful. Each member of the proposed Class (defined below) has been similarly injured financially by Defendants' misconduct, and is entitled to restitution of the portion of the gross premium that

---

[1] https://www.actuary.org/sites/default/files/files/publications/TravelInsuranceMonograph_09052018.pdf

Defendants accepted in exchange for insuring against post-departure risks, but for which they never provided any coverage (*i.e.*, assumed the specified risks) in return.

## THE PARTIES

**Plaintiffs**

16.     Plaintiff Kevin and Lourdes Isaacson are natural persons who at all relevant times resided in Saugus, California.

**Defendants**

17.     Defendant John Hancock Insurance Agency, Inc. is a Delaware corporation with its principal place of business at 197 Clarendon St. Boston, MA. John Hancock is the "agency/distributor" of the Travel Insurance Policies, and a subsidiary of Manulife.

18.     Starr Indemnity & Liability Company is a Texas company with its principal place of business in New York, New York. Starr is the underwriter/insurer obligated to the insured for the payment of benefits provided under the Travel Insurance Policies.

19.     Seven Corners Inc. is an Indiana corporation headquartered in Carmel, Indiana. Seven Corners is the plan administrator of the Travel Insurance Policies.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one member of the proposed class is of diverse citizenship from one defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

21.     This Court has personal jurisdiction over Defendants. Defendant John Hancock is headquartered in Massachusetts, and marketed/distributed the policies at issue from

Massachusetts, and all Defendants conduct substantial business in Massachusetts, including in connection with Travel Insurance Policies.

22. Venue lies within this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### A. Defendants' Travel Insurance Policies and Practices

23. Defendants sell single-trip travel insurance policies. These policies are designed specifically to cover the perils associated with a specific trip.

24. Pursuant to an agreement among John Hancock, Starr, and Seven Corners, Seven Corners administers the claims process in connection with the travel insurance distributed by John Hancock and underwritten by Starr.

25. Defendants offer a variety of Travel Insurance Policies each of which includes insurance benefits. These Travel Insurance Policies protect against perils for both pre-departure and post-departure events. As described on John Hancock's website:

> Travel insurance provides emergency assistance services should you need help while you travel. Travel insurance covers: unexpected costs such as having to cancel or interrupt your trip due to unexpected reasons, such as illness of you, a family member, or a travel companion, severe weather, missed connections, strikes, default of travel supplier and other unexpected events that may arise before or during your trip. Plans include trip cancellation and interruption, accident and sickness with assistance services, medical repatriation, baggage coverage, accident insurance, travel accident insurance and many other benefits.[2]

26. Pre-departure insurance coverage is provided as "Trip Cancellation" which can cover the costs of a cancelled trip if the trip is cancelled for a covered reason. Defendants also provide an optional additional insurance benefit of "Trip Cancellation For Any Reason" which

---

[2] https://www.johnhancocktravel.com/

- 6 -

allows an insured to recover some of the costs of the covered trip as long as the trip is not cancelled for an excluded reason.

27.     Defendants' Travel Insurance Policies also contain at least one insurance benefit covering a peril which can *only* arise post-departure and has zero possibility of ever occurring prior to commencement of the single insured trip. The post-departure insurance coverages offered in Defendants' Travel Insurance Plans include, by way of example, benefits for Trip Interruption, Trip Delay, Baggage Delay, Missed Connection, Emergency Accident and Emergency Sickness Medical Expense, Accidental Death and Dismemberment, and Repatriation of Remains.

28.     The time for which various insurance coverage takes effect differs depending on the type of coverage. For example, the pre-departure insurance for Trip Cancellation coverage begins "12:01 A.M. local time, at Your location on the day after the required premium for such coverage is received by Us or Our administrator as shown in the confirmation of benefits." *See* Exhibit A, "Travel Insurance Policy," "Section III. Eligibility And Period of Coverage", at page 4 of 11.

29.     Post-departure coverages, on the other hand, are not effective until the trip has commenced. In the Travel Insurance Policy sold to Plaintiffs, the Trip Delay coverage "is in force while en route to the Covered Trip from Your home and also while en route from the Covered Trip to Your Home." *See* Exhibit A, "Travel Insurance Policy," "Section III. Eligibility And Period of Coverage", at page 4 of 11. All other post-departure coverages begin "at the later of the time of Your departure on the Scheduled Departure Date; or Your actual departure for Your Covered Trip." *Id*.

30.     Regardless of the purchase platform utilized, or the specific benefits included in any purchased Travel Insurance Policy, Defendants, as a matter of standard course and practice,

do not refund any portion of the gross premium paid, including those premiums paid exclusively in exchange for post-departure coverage even when an insured does not commence the insured trip.

31. This practice is wrong. Defendants are not at risk of ever having to cover any post-departure perils until an insured begins his or her trip. When an insured trip is cancelled prior to departure, Defendants have neither accepted nor assumed any transferred risk of loss associated with post-departure perils, and as such, provide no consideration in exchange for, and have not earned, the premiums they have been paid to cover those particular risks. Therefore, when an insured's trip is cancelled prior to commencement, Defendants are required, but systematically fail, to return the *pro rata* portion of any gross premium already paid which represents the Defendants' charges for purportedly insuring against post-departure perils.

32. Indeed, Defendants provide no coverage for post-departure perils until the trip is actually commenced. Thus, in the event of trip cancellation, any coverage pre-paid by the policyholder for post-departure perils is illusory since Defendants do not provide any consideration in exchange for that portion of the gross premium allocable to such perils.

33. In fact (seemingly in recognition of the unjustness of their course of conduct), Defendants, recently, appear to have changed their practice in Virginia, and New York only. According to the John Hancock website they now offer in these two jurisdictions that: "[a]fter 14 day free look period has expired we will provide a pro-rata cancel refund for policy cancellation at any time as long as the insured has not started their trip and a claim has not been filed."[3]

B. **Plaintiffs' Travel Insurance Policy and Cancelled Trip.**

34. In February 2020, Plaintiff Lourdes Isaacson booked travel for herself and her

---

[3] https://www.johnhancocktravel.com/faq

husband Kevin to travel to the Philippines from Los Angeles (and back to the United States). Plaintiffs were to fly from Los Angeles to Manilla and then from Manilla to Dumaguete, and they had made reservations at resorts in the Philippines during their stay. The trip was to commence on June 2020.

35. On or around March 20, 2020, Plaintiffs purchased online a "Bronze Plan" Travel Insurance Policy from Defendants for $316.00 to insure their trip to Philippines. Both Plaintiffs are insured on the policy. The policy provided the pre-departure "Trip Cancellation" benefit, and provided numerous post-departure benefits including Missed Connection, Trip Delay, Baggage Delay, Baggage/Personal Effects, Accidental Death and Dismemberment, Emergency Accident and Emergency Sickness Medical Expense, Emergency Medical Evacuation and Medically Necessary Repatriation, and Repatriation of Remains.

36. On or around June 7, 2020, Philippine Airlines cancelled the booked flights from Los Angeles to the Philippines due to the COVID-19 pandemic. Plaintiffs consequently cancelled the remainder of their travel.

37. Plaintiffs submitted a Trip Cancellation claim to Seven Corners in June 2020. In August 2020, Seven Corners denied the claim and in September 2020, also denied Plaintiffs' subsequent appeal, stating, among other things, that the pandemic was not a covered reason for trip cancellation under the policy.

38. In November 2020, Plaintiffs requested a partial premium refund from Seven Corners, stating in an email, "[w]e are both insureds under the travel plan sold to us by John Hancock Insurance Agency and Starr Indemnity & Liability Company. Even though you have denied our claim for payment due to this cancelled travel two times, we think we are still entitled to a refund for a portion of the premium we paid for benefits that were to take effect during our

travel, but never did because the trip was cancelled by Philippine Airlines." *See* Exhibit B.

39.    A representative of Seven Corners responded to this claim, on November 19, 2020, stating: "I reviewed your account and unfortunately there is not a benefit that can provide coverage for a cancellation claim for a trip being cancelled on you due to pandemic. We sincerely apologize we are not able to provide a more favorable response." *See* Exhibit C.

40.    Defendants refused to provide a refund of the premium attributable to post-departure risks. This was wrong. Because Plaintiffs never commenced their trip, the risks associated with post-departure perils never attached and none of the post-departure coverages were effective. Thus, there was no consideration for the portion of the premium paid for post-departure benefits. Therefore, Defendants were obligated to return that portion of the gross premium that Plaintiffs paid for benefits exclusively covering post-departure risks.

41.    Defendants' practice of failing to refund any portion of the premiums paid for post-departure benefits is systematic and uniform whenever an insured cancels an insured trip, or a trip is cancelled by the trip provider as occurred here, before he or she embarks on the trip.

## **CLASS ALLEGATIONS**

42.    Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

43.    Plaintiffs seek to represent the following class and subclass (collectively "the Class"):

> **Nationwide Class**
> All persons (including natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons) who while in the United States, or who as residents of the United States, purchased a single-trip Travel Insurance Policy from Defendants that included any coverages applicable exclusively to post-departure risks, canceled their insured trip or their trip was canceled prior to the scheduled departure, and did not receive a refund from

Defendants for the insurance premium paid exclusively for post-departure benefit(s).

**California Subclass**

All persons (including natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons) who while in California, or who as residents of the California, purchased a single-trip Travel Insurance Policy from Defendants that included any coverages applicable exclusively to post-departure risks, canceled their insured trip or their trip was canceled prior to the scheduled departure, and did not receive a refund from Defendants for the insurance premium paid exclusively for post-departure benefit(s).

44. Excluded from the Class are Defendants, their employees, officers, directors, legal representatives, heirs, successors and wholly- or partly-owned subsidiaries or affiliates.

45. The number of persons who are members of the Class is so numerous that joinder of all members in one action is impracticable. The Class is reasonably estimated to be at least in the hundreds (and likely in the thousands). While the precise number, names, and addresses of all members of the Class are unknown to Plaintiff, such information is ascertainable from Defendants' records, including the identity of its insureds and the policies and coverages purchased.

46. The claims of the Class all derive directly from Defendants' single uniform policy of not refunding insurance premiums paid for post-departure benefits, whenever a trip is canceled prior to the scheduled departure.

47. The objective facts are the same for all Class members: a) each paid a gross premium to Defendants as consideration for a standardized travel insurance plan with pre-bundled coverage options, which included coverage protection exclusively against post-departure travel risks and substantially similar language governing the effective date of such coverages; b) each canceled their insured trip or their trip was canceled prior to the scheduled departure; and, Defendants unconscionably, unjustly, unfairly and unlawfully failed in that precise circumstance

to ever return to each and every Class member the *pro rata* portion of the gross premium that was paid for exclusively post-departure benefits (whether or not requested by the Class member).

48. Defendants did not differentiate, in degree of care or candor, their actions or inactions among individual members of the Class regarding their failure to make *pro rata* refunds of unearned, risk-free premiums for post-departure perils that Defendants never actually insured because the trips were canceled before departure. The objective facts are the same for all members of the Class. Within each Claim for Relief asserted below by the respective Class, the same legal standards govern resolution of the same operative facts existing across all members' individual claims.

49. Because the claims of each member of each Class have a common origin and share a common basis in terms of Defendants' systematic misconduct and their standardized travel insurance plans, there are common questions of fact and law which exist as to each Class member (in the respective Class) under Federal Rule of Civil Procedure 23(a)(2), and which predominate over any questions affecting only individual members under Federal Rule of Civil Procedure 23(b).

50. Substantial questions of fact and law that are common to all members of each respective Class, and which control this litigation and predominate over any individual issues, include the following:

   a) Whether Defendants, as a matter of course and policy, retained unearned, risk-free premiums paid exclusively for coverage of post-departure perils, whenever the purchaser of a Travel Insurance Policy canceled his or her travel, or such travel was cancelled, prior to his or her scheduled departure;

   b) Whether by virtue of the trip being cancelled prior to departure, Defendants faced no risk of having to cover post-departure perils and thus retained unearned premium;

   c) Whether by virtue of the of the trip being cancelled prior to departure,

                  Defendants provided no consideration in exchange for the premiums paid exclusively for coverage of post-departure perils;

    d)    Whether it would be unjust for Defendants to retain the *pro rata* portion of the gross premium paid exclusively for post-departure coverage, when an insured's trip is cancelled prior to departure; and

    e)    Whether it would be "unfair" or "unlawful" under the California Unfair Competition Law for Defendants to retain the *pro rata* portion of the gross premium paid exclusively for post-departure coverage, when an insured's trip is cancelled prior to departure.

51.    Plaintiffs' claims are typical of the claims of the Class and arise from the Defendants' same course of conduct against the Class as a whole. There are no conflicts between the interests of the named Plaintiffs and the interests of the members of the Class. The relief Plaintiffs seek is typical of the relief sought for the members of the Class.

52.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes because of the common injury and interests of the members of the Class and the singular conduct of Defendants that is, and was, applicable to all members of the Class. Plaintiffs have retained counsel competent and experienced in class action litigation that will adequately represent and protect the interests of the members of the Class.

53.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) not only because common questions of fact and law predominate, but also because a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

54. Plaintiffs are also not aware of any management difficulties that would preclude maintenance of this litigation as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.

## CLAIMS FOR RELIEF

### COUNT ONE
### QUASI-CONTRACT/UNJUST ENRICHMENT/RESTITUTION
**(On Behalf of the Nationwide Class and California Subclass)**

55. Plaintiffs repeat and reallege every allegation contained in the Complaint as if fully set forth herein.

56. Defendants have been unjustly enriched at the expense of Plaintiffs and other members of the Class as a result of Defendants' systematic and willful misconduct.

57. Plaintiff and other members of the Class have conferred a benefit upon Defendants, in the form of unearned, risk-free premiums, and Defendants have appreciated and knowingly retained that benefit without lawful justification or excuse. Absent this litigation, Defendants will not return the unearned, risk-free premiums which they have deliberately and systematically retained.

58. Whenever travel is canceled prior to commencement of the insured trip, Defendants' retention of the premiums paid for these post-departure benefits is unjust and inequitable because Defendants never assumed any risk of having to pay post-departure benefits to Plaintiff and other members of the Class. Put simply, no coverage of any post-departure peril is ever transferred to or assumed by Defendants when a trip is cancelled, and thus, such coverage is wholly illusory since the *sine qua non* of post-departure travel insurance (irrespective of the type and level purchased within any particular policy) is *actual travel* on the insured trip.

59. Never having been placed at risk, Defendants' retention of these premiums is also unjust because they have provided no consideration in return for their retention of these premiums.

60. Further, there is no lawful justification or excuse for Defendants' systematic and willful misconduct. The Travel Insurance Policies executed by and between Plaintiffs and other members of the Class, on the one hand, and Defendants, on the other, nowhere set forth the alleged right of Defendants to withhold refund of any premiums previously paid for post-departure benefits in the event that an insured needs to cancel his or her insured trip.

61. Because Defendants do not give any consideration for the premiums which are allocable to post-departure benefits, even if any portion of the insurance contract purported to allow retention of premiums paid for exclusively post-departure benefits when an insured does not commence travel, this provision would be void and/or ineffective as a matter of law.

62. It would be inequitable for Defendants to retain the profits obtained from their wrongful conduct because retaining such profits would come at the expense of Plaintiff and other members of the Class who are entitled to a *pro rata* refund of their gross premium. Plaintiffs and other members of the Class are entitled to restitution and/or disgorgement of all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

**COUNT TWO**
**VIOLATION CALIFORNIA'S UNFAIR COMPETITION LAW**
Business & Professions Code §§ 17200 *et seq.*
**Unfair and Unlawful Business Practices**
(On behalf of the California Subclass against all Defendants)

63. Plaintiffs repeat and reallege every allegation contained in the Complaint as if fully set for the herein.

64. Cal. Bus. & Prof. Code § 17200 *et seq.* prohibits any unlawful, unfair or fraudulent business act or practice.

65. Defendants' acts and practices, as alleged herein, are unfair and unlawful business acts and practices under the UCL.

66. By retaining unearned premiums, Defendants' practices as alleged herein are unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive, unscrupulous and violate long-standing common law rules against the retention of unearned premiums. The gravity of Defendants' conduct outweighs any benefit of such conduct.

67. By virtue of Plaintiffs and other members of the California Subclass not having taken their trips (prior to departure), Defendants' consideration (namely, the provision of insurance coverage protecting against post-departure perils) either became entirely void or materially failed before ever being rendered, because Defendants never had to assume the risk of having to cover any of these perils.

68. Plaintiffs and other members of the California Subclass have suffered monetary injury, including in the form of the unearned premiums retained by Defendants.

69. By reason of the foregoing, Defendants violated the California UCL by, *inter alia*, retaining, and failing to return the premium paid apportionable to post-departure benefits for travel that did not occur and for which they never had to assume the risk of having to cover any of these perils.

70. Defendants should be enjoined from their unfair and unlawful refunding practices (and failure to disclose such practices). Plaintiffs and the Class are also entitled to and seek restitution and disgorgement of their money or property that Defendants acquired by means of their unlawful, and unfair competition.

71.     Pursuant to California Code of Civil Procedure Section 1021.5, Plaintiff and the Classes are entitled to recover their attorneys' fees and expenses in connection with Plaintiff's unfair competition claims, the substantial benefit doctrine, and/or the common fund doctrine.

**PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves and all others similarly situated, requests the Court to enter judgment on his behalf and on behalf of the Class as follows:

1.      For a temporary, preliminary and/or permanent order for injunctive relief enjoining Defendants from pursuing the practices complained of above;

2.      For an order requiring disgorgement and restitution of Defendants' ill-gotten gains and to pay restitution to Plaintiffs, and the proposed Class of all funds acquired by means of any practice declared by this Court to be unjust, unlawful, deceptive or unfair;

3.      For restitution, compensatory, special and general damages according to proof and as the Court deems just and proper;

4.      Granting certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order distributing any moneys recovered on behalf of the Class, via fluid recovery or cy pres recovery where necessary to prevent Defendants from retaining any of the profits or benefits of their wrongful conduct;

5.      For an order awarding pre-judgment interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

6.      For an order awarding post-judgment interest;

7.      For an order awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action including but not limited to attorneys' fees and expenses under the substantial benefit and/or common fund doctrine or other similar principle or doctrine, or in accordance with Cal. Code of Civ. Proc. §§ 1021.5; and

8.　　For such other and further relief that is available, and the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demands a trial by jury on all claims triable as a matter of right.

Dated: August 16, 2021　　　　　　　　　　Respectfully Submitted,

**BLOCK & LEVITON LLP**

*/s/ Jason M. Leviton*
Jason M. Leviton, Esq.
jason@blockleviton.com
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600

**BERGER MONTAGUE PC**
Peter R. Kahana*
Y. Michael Twersky*
mitwersky@bm.net
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000

**BERGER MONTAGUE PC**
John G. Albanese*
jalbanese@bm.net
1229 Tyler Street NE
Suite 205
Tel.: (612) 597-5997

Ingrid M. Evans*
**EVANS LAW FIRM, INC.**
3053 Fillmore Street, #236
San Francisco, CA 94123
Tel.: (415) 441-8669
Fax: (888) 891-4906
ingrid@evanslaw.com

*pro hac vice forthcoming